## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KRISTINE K. LUCIANI**,                                      Chapter 7
      Debtor                                                Case No. 16-14745-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**WARREN E. AGIN**, Chapter 7 Trustee,
      Plaintiff
v.                                                           Adv. P. No. 18-01021-JNF
**JOHN ALBERT GRASSO and JOANNE
SILVIA GRASSO, as Trustees of
GRASSO FAMILY REVOCABLE
LIVING TRUST**,
      Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Motion to Dismiss filed by John Albert Grasso and

Joanne Silvia Grasso (the "Grassos"), as Trustees of the Grasso Family Revocable Living Trust

(the "Trust").  Pursuant to their Motion, the Grassos, as Trustees of the Trust (the "Defendants")

seek dismissal of the six-count Complaint filed against them in their capacity as Trustees by

Warren E. Agin (the "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this

proceeding by Fed. R. Bankr. P. 7012(b).  Through his Complaint, the Plaintiff seeks to avoid,

pursuant to Mass. Gen. Laws. ch. 109A §§ 5 and 6, and 11 U.S.C. §§ 547 and 548, a transfer from

the Kristine K. Luciani, Chapter 7 Debtor (the "Debtor"), to the Defendants, and to recover the

allegedly fraudulently transferred property pursuant to 11 U.S.C. §§ 544, 550 and 551, as well as

disallowance of any claim pursuant to 11 U.S.C. § 502(d).

1

The issue presented is whether, accepting as true the allegations in the Complaint, the Plaintiff has stated plausible claims for relief. For the reasons set forth below, the Court concludes that he has stated some plausible claims but other claims must be dismissed.

## II. BACKGROUND[1]

The Debtor filed a Chapter 7 petition on December 15, 2016. The Plaintiff was appointed as Chapter 7 trustee the next day. On Schedule A/B: Property, the Debtor listed an ownership interest in 1195 Forest Street, Marshfield, Massachusetts (the "Property") with a value of $419,000, as well as personal property valued at $369,019.48, largely attributable to an exempt pension with a value of $339,202.31. On Schedule C: The Property You Claim as Exempt, the Debtor claimed the Massachusetts exemptions. In particular, she claimed the Massachusetts homestead exemption with respect to the Property, *see* Mass. Gen. Laws ch. 188, § 3, as well as applicable exemptions with respect to her pension, *see* Mass. Gen. Laws ch. 235, §34A and Mass. Gen. Laws ch. 246, § 28. On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed the Defendants as the holders of a claim in the amount of $388,714.98 secured by the Property. The Debtor, on Schedules I and J pertaining to her income and expenses, disclosed that she is a registered nurse, receives monthly alimony in the sum of $5,560.84, has total monthly income of $7,534.50, has three dependents, has monthly ownership expenses for the Property in the sum of $2,425 and has total monthly expenses in the sum of $7,554.48.

The Chapter 7 trustee filed a notice of assets and the Court issued a bar date for filing claims. Five creditors filed claims in the case, including the Defendants in the sum of $383,745.77,

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

2

Navient Solutions, the holder of a student loan debt, in the sum of $21,078.21, and three other creditors with claims totaling approximately $46,000.

On February 13, 2018, the Plaintiff filed his six-count Complaint against the Defendants, who are the Debtor's parents and California residents, setting forth the following counts:  Count I (To Avoid and Recover Fraudulent Transfer Pursuant to M.G.L. c. 109A, § 5 and 11 U.S.C. §§ 544, 550, and 551); Count II (To Avoid and Recover Fraudulent Transfer Pursuant to M.G.L. c. 109A, § 6 and 11 U.S.C. §§ 544, 550, and 551); Count III (To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548, 550, and 551); Count IV (Declaration Pursuant to 11 U.S.C. § 551); Count V (To Avoid and Recover Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550); and Count VI (To Deny Claim Pursuant to 11 U.S.C. § 502(d)).

### III. THE PLAINTIFF'S COMPLAINT

The Court paraphrases the Plaintiff's Complaint as follows.

In early 2015, the Debtor was attempting to purchase a home and identified the Property, which was listed for a sale price in excess of $400,000, as the home she wished to buy.  At the time, however, the Debtor only could qualify for conventional mortgage financing in the amount of approximately $300,000.  Because the Debtor was limited in her ability to obtain sufficient financing to purchase the Property through a conventional lender, the Debtor turned to her parents, the Grassos, to assist her in purchasing the Property.  The parties agreed that the Trust, created by the Grassos and for which they served as Trustees, would make the purchase and take title to the Property with the intent of eventually transferring the Property to the Debtor.

On May 7, 2015, the Trust acquired title to the Property for $419,000.  The Debtor paid the initial deposit with the offer to purchase and subsequently paid the entire $19,000 deposit at the

time of the purchase and sale agreement.[2]  On the same date, the Debtor executed a promissory note (the "Note") in the principal amount of $400,000 (i.e., the purchase price less the $19,000 deposit paid by the Debtor) in favor of the Trust.  As alleged by the Plaintiff, "[t]here was no consideration, stated or otherwise, for the Note." The interest payments under the Note were $1,909.66 per month.  The Note, however, contained no maturity date for the payment of the outstanding principal, although it accrued interest at the rate of four percent per annum.

At the same time that the Debtor executed the Note, the Debtor entered into a lease with the Trust (the "Lease"), which required monthly payments of $1,909.66.  The Debtor and the Trust also entered into "an agreement whereby the Debtor would purchase the Property from the Trust for the purchase price of $419,000, with the Debtor's original payment of the $19,000 deposit credited toward the purchase price," such that the actual purchase price would be $400,000, the same amount as the Note.

On or about June 7, 2015, the Debtor began making monthly payments to the Trust in the amount of $1,909.66.  Nineteen months later, on December 15, 2016, the Trust transferred the Property to the Debtor for stated consideration of $419,000 pursuant to a deed (Land Court Doc. No. 754064), and, again on the same day, the Debtor also provided a mortgage (the "Mortgage") to the Trust to secure the prior Note in the amount of $400,000 which was recorded at 11:57 a.m. The Debtor commenced her Chapter 7 case at 1:50 p.m. that same day.

The Trustee alleged the following in his Complaint.

The Trust's purchase of the Property was a straw transaction for the sole purpose of contravening the Debtor's inability to obtain financing in her own name. . . . The Trust was never the intended equitable owner of the Property. . . . The Debtor and the Grassos always intended for the Debtor to be the owner of the Property and to make all payments on the Property, which is precisely what occurred.

---

[2] Plaintiff did not allege that the Debtor paid the $19,000 to the Defendants, and the Court infers that she paid the deposit to the seller or sellers of the Property.

## IV. POSITIONS OF THE PARTIES

### A. The Defendants

The Defendants correctly observe that through Counts I, II and III of the Complaint, the Plaintiff seeks to avoid the Note and Mortgage on the principal grounds that they constitute constructive fraudulent transfers pursuant to Mass. Gen. Laws Ch. 109A, §§ 5 and 6, and 11 U.S.C. §548(a)(1)(B).[3] They argue that the facts of the Complaint, when taken as true, demonstrate that the Debtor received reasonably equivalent value in exchange for both the Note and Mortgage because in exchange for the Note the Debtor received "(1) the Defendants' promise that the Trust would convey the Property to the Debtor at a later date for a set price; and (2) a lease-to own agreement which gave the Debtor immediate use of the Property in exchange for monthly payments of $1,909.66 - -  the exact amount of the monthly interest payments called for under the Note."  They add that, in exchange for the Mortgage, the Debtor received title to the Property, stating the following:  "The Debtor, as buyer, received a $400,000 house, and the Grassos, as sellers, took back a $400,000 mortgage. The Debtor, on the Trustee's own facts, received reasonably equivalent value in exchange for the Note and Mortgage."

With respect to the Plaintiff's reference to the Note and Mortgage being transferred with the intent to hinder, delay or defraud one or more creditors as referenced by the Plaintiff in Count III, the Defendants observe that the motivation for the transfer was not fraudulent and was, in fact, set forth in the Complaint as follows:  "Because the Debtor could not qualify for sufficient financing, the Debtor and the Grassos agreed to have the Trust act as a straw purchaser to make the purchase and to take title to the Property."  They assert that "there is nothing fraudulent about

---

[3] The Plaintiff in Count I under Mass. Gen. Laws Ch. 109A, § 5 does not mention any actual intent to hinder, delay or defraud any creditor of the Debtor.  In Count III under 11 U.S.C. § 548, the Plaintiff, without specifically referencing § 548(a)(1)(A), states that "[t]he Note and Mortgage were transferred to the Trust with the intent to hinder, delay, or defraud one or more creditors."

such conduct, and the Complaint does not identify any reason why or how such a transaction

could be fraudulent."

The Defendants also seek dismissal of the Plaintiff's preference count.  Although the

Defendants agree that Debtor granted the Mortgage to the Defendants while she was insolvent,

on account of an antecedent debt, and within 90-days of the petition date, they contend that the

Plaintiff cannot satisfy the requirement set forth in section 547(b)(5), and, in addition, they raise

affirmative defenses.  The Defendants state:

> Section 547(b)(5), an essential element of a preference, requires that the transfer
> enable the creditor to receive more than the creditor would receive if: (a) the case
> were a case under Chapter 7, (b) the transfer had not been made, and (c) the
> creditor received payment of such debt to the extent provided by the provisions
> of the Code.
>
> . . .  Here, had the transfer of the mortgage not occurred, the transfer of the
> Property would not have occurred, and the Grassos would still own the property
> and would not even be a creditor [sic] of the Debtor.
>
> . . . Similarly, because the Mortgage was transferred simultaneously, and as a
> condition of the transfer of the Property, the Grassos provided new value for the
> mortgage under both Sections 547(c)(3) and (4).

The Defendants emphasize that all four elements of § 547(c)(3) have been satisfied because "[t]he

Mortgage, with a description on the Property, was executed by the Debtor and recorded

simultaneously with the transfer of the Property by the Grassos to the Debtor. The Mortgage was

given to enable the Debtor to acquire the Property, and was in fact used by the Debtor to acquire

the Property."

The Defendants conclude that because the remaining counts (i.e., Counts IV and VI) are

derivative of the Counts 1, II, III,  and V, they must be dismissed.

### B. The Plaintiff

The Plaintiff contends that instead of conducting a contemporaneously real estate sale

involving a note and mortgage from the Debtor with title passing to the Debtor, the Defendants

required the Debtor to sign the Note for $400,000 dated May 7, 2015 and that in exchange for the Note the Debtor did not receive any consideration as she did not take title to the Property or receive anything of equivalent value from the Defendants.  The Plaintiff contends that "[t]he Note constituted a fraudulent conveyance," emphasizing that "nothing in the Note provided the Debtor with any rights to the Property," even though "the Defendants required the Debtor to make the down payment on the Property in the amount of $19,000."

The Plaintiff also argues that while the Defendants purchased the Property and leased it to the Debtor there was "no basis for the Debtor to have given the Defendants a $400,000 note for the privilege of leasing the Property." Therefore, the Plaintiff argues that both the the Note and the $19,000 deposit were fraudulent transfers.  The Plaintiff further argues that, although the Debtor eventually took title to the Property and granted the Mortgage to the Defendants dated December 15, 2016, the Mortgage constituted a voidable preference because it occurred more than 18 months after the Note was given and was an effort by the Defendants to secure the antecedent debt represented by the Note.  In the alternative, the Plaintiff contends that "if the Note was a fraudulent conveyance, the Mortgage is unsupported by any valid payment obligation and therefore void."

Finally, the Plaintiff argues:

The Debtor in her motion to dismiss also ignores the fact that she was actively pursued by creditors with claims at the time of the subject transfers and transactions. Indeed, such creditor collection efforts likely contributed to her inability to obtain financing. The Debtor's plan to effectively purchase the Property through her parents while leaving title in them demonstrates an obvious and open intent to hinder, delay or defraud her creditors.

## V. DISCUSSION

A. <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556).

According to the United States Court of Appeals for the First Circuit in <u>Nisselson v. Lernout,</u> 469 F.3d 143, 150 (1st Cir. 2006), *cert. denied,* 550 U.S. 918 (2007), "[w]hile most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." <u>Id.</u> at 150 (citing, inter alia, <u>Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)</u>, 324 F.3d 12, 16 (1st Cir. 2003), and <u>Blackstone Realty v. FDIC</u>, 244 F.3d 193, 197 (1st Cir. 2001)). According to the First Circuit, dismissal predicated upon an affirmative defense requires "that '(i) the facts establishing the defense are definitely ascertainable from the complaint and other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" <u>Id.</u> at 150 (quoting <u>Rodi v. S. New Eng. School of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004)).

8

B. <u>Applicable Law: Avoidance of Constructively Fraudulent Transfers or Obligations</u>

Through Counts I and II, the Plaintiff seeks the avoidance of the Note and Mortgage under

Mass. Gen. Laws ch. 109A, §§ 5 and 6.

Section 5 provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . .

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Mass. Gen. Laws ch. 109A, § 5. Section 6, in turn, provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Mass. Gen. Laws ch. 109A, §6. Through Count III, the Plaintiff seeks the avoidance of the Note

and Mortgage pursuant to 11 U.S.C. § 548. Section 548 of the Bankruptcy Code contains similar

language and provides in pertinent part the following:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an

insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . . .

11 U.S.C. §.S.C. 548.  The Bankruptcy Code does not define the term "obligation" but it does define the term "transfer."  The term transfer has the following meaning:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
> > (i) property; or
> > (ii) an interest in property.

11 U.S.C. § 101(54).  Through Counts I-III, the Plaintiff has alleged that "[t]he Debtor received less than reasonably equivalent value from the Trust in exchange for the Note and Mortgage."  With respect to reasonably equivalent value, the court in <u>Baldiga v. Moog, Inc. (In re Comprehensive Power, Inc.),</u> 578 B.R. 14 (Bankr. D. Mass. 2017), observed:

> The analysis of what constitutes "reasonably equivalent value" under the relevant sections of the Massachusetts UFTA mirrors the analysis of "reasonably equivalent value" under 11 U.S.C. § 548, *see* <u>[Tomsic v. Pitocchelli (In re] Tri–Star [Techs. Co., Inc.],</u> 260 B.R. [319] at 324 [(Bankr. D. Mass. 2001)]; <u>Riley v. Countrywide Home Loans Inc. et al. (In re Duplication Mgmt., Inc.),</u> 501 B.R. 462, 481–84 (Bankr. D. Mass. 2013), which has been described as follows:

> > [C]ourts have uniformly held that a reasonably equivalent value determination should be based on all of the facts and circumstances of the case. The Court should "compare what was given with what was received." And, in making this determination, both direct and indirect benefits should be considered. It is not necessary that there be an exact exchange in order to establish reasonably equivalent

> value, but the Court "must keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed . . . will have significantly harmed ... innocent creditors.

Tri–Star, 260 B.R. at 325–26 (internal citations omitted).

In re Comprehensive Power, Inc., 578 B.R. at 33.  Counts I–III require separate evaluations of whether the obligation represented by the Note executed on May 7, 2015 can be avoided and whether the execution of the Mortgage executed on December 15, 2016 can be avoided.

C. Counts I-III

i. The May 7, 2015 Obligation

The Plaintiff conflates the transactions evidenced by the May 7, 2015 Note, the December 15, 2016 deed from the Trust to the Debtor, and the related Mortgage of the same date executed by the Debtor.  As noted above, each transaction, however, must be evaluated separately in accordance with applicable provisions of the Bankruptcy Code and Massachusetts law to determine their asserted voidability.

"The Bankruptcy Code does not . . . define an 'obligation,' but it presumably means '[a] formal binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract.' Black's Law Dictionary 1104 (8th ed. 2004). In most situations, therefore, the 'obligation' will impose a 'debt' on the obligor, and give a 'claim' to the obligee." In re Asia Global Crossing, Ltd., 333 B.R. 199, 203 (Bankr. S.D.N.Y. 2005).  Section 548 and its state law analogs "attempt to protect creditors from transactions which are designed, or have the effect, of unfairly draining the pool of assets available to satisfy creditor claims, or which dilute legitimate creditor claims at the expense of false or lesser claims." 5 Henry J. Sommer & Richard Levin, Collier on Bankruptcy ¶548.01[1][a], p. 548-11 (16th ed. 2017) (footnote omitted).  Accordingly, the obligation represented by the Note has

11

the potential of diluting creditors' claims if the Debtor did not receive reasonably equivalent value in exchange for her promise to pay $400,000.

When the Debtor executed the Note in favor of the Trust on May 7, 2015, she did not transfer any property to the Defendants.  *See* U.S. Bank. Nat'l Ass'n v. Verizon Commc'ns Inc., No. 3:10–CV–1842–G, 2012 WL 3100778 at *5 (N.D. Tex. July 31, 2012) ("When a debtor issues a note or makes a guarantee, it incurs an obligation; it does not transfer any property.).  *See also* Don E. Williams Co. v. Comm'r of Internal Revenue, 429 U.S. 569, 582–83 (1977) ( "[A] promissory note, even when payable on demand and fully secured, is still, as its name implies, only a promise to pay, and does not represent the paying out or reduction of assets.").  Accordingly, to the extent the Plaintiff seeks an avoidance of a transfer on May 7, 2015, he has failed to state a plausible claim for relief.  Iqbal, 556 U.S. at 678.

The Debtor, however, did incur an obligation in the amount of $400,000 and agreed to make monthly payments of $1,909.66 pursuant to the Lease with the Trust and/or pursuant to the agreement whereby, in the Plaintiff's words, "the Debtor would purchase the Property from the Trust for the purchase price of $419,000, with the Debtor's original payment of the $19,000 deposit credited toward the purchase price."  That agreement, the actual terms of which are not set forth with specificity in the Complaint, may be considered an installment land contract.  In Kradel v. Love (In re Love), 38 B.R. 771 (Bankr. D. Mass. 1983), the court considered the implications of an installment land contract under Pennsylvania law.  It stated:

> A contract for the sale of land operates as an equitable conversion; the vendor's interest becomes personalty and he holds legal title for the vendee to the extent of the vendee's payment while the purchaser is trustee of the vendor as to the purchase price. The vendor's interest is a "security title" which has all the incidents of a mortgage and constitutes a charge against the subject land for the purchase price. While the Vendor's retained interest is not strictly a lien because one cannot own an article and at the same time have a lien upon it, this distinction has not prevented Pennsylvania courts from considering the vendor's interest a lien. . . .

> Thus, a vendor who retains legal title under an installment land contract involving
> residential property is entitled to the protections afforded to residential
> mortgagees under Pennsylvania law.

In re Love, 38 B.R. at 774 (citations omitted).  Similarly, in Kane v. Town of Harpswell (In re Kane),

248 B.R. 216 (B.A.P. 1st Cir. 2000), aff'd, 254 F.3d 325 (1st Cir. 2001), the court, in the context of

determining whether an installment land contract was an executory contract under Maine law

for purposes of 11 U.S.C. § 365, observed:

> In some places, it is common for purchasers of real estate to enter into installment
> land sales contracts, under which at the end of the installment payments the seller
> transfers title to the buyer. In virtually every other respect, such as responsibility
> for taxes, insurance and maintenance, the transaction is indistinguishable from a
> sale in which the seller takes back a mortgage to secure payment. Because of the
> similarity of such contracts to secured mortgage loans, courts have often treated
> them as secured debts rather than executory contracts. The classification of a
> particular contract depends on the terms of the transaction. If the seller has no
> significant duty to the buyer other than to convey title upon completion of
> payments, the contract should be found to be a secured debt and not an executory
> contract. Treatment of the contract as a secured debt rather than an executory
> contract has a number of ramifications, including the inapplicability of section 365.

In re Kane, 248 B.R. at 223 (quoting 3 Collier on Bankruptcy ¶ 365.02[1][a] (15th ed. rev.

2000)(footnote omitted)).  See generally 14 Williston on Contracts § 42:19 (4th ed.) ("The relation of

a vendor and purchaser of realty even under a wholly executory contract has been likened to the

relation of mortgagor and mortgagee; when the purchaser is given immediate possession and

beneficial enjoyment of the land, the analogy is sound." (footnotes omitted)).  Nevertheless, as

this Court stated in In re Pina, 363 B.R. 314 (Bankr. D. Mass. 2007),

> Massachusetts does not follow the view recognized in many States that, on the
> execution of a purchase and sale agreement, the purchaser is regarded as the
> equitable owner of real estate, entitled to receive the rents and profits from the
> property. See Laurin v. DeCarolis Constr. Co., 372 Mass. 688, 690–691, 363 N.E.2d
> 675 (1977), and authorities cited; Beal v. Attleboro Sav. Bank, 248 Mass. 342, 344,
> 142 N.E. 789 (1924). In Massachusetts the seller continues to hold legal title to the
> property subject to an equitable obligation to convey on payment of the purchase
> price. See Laurin v. DeCarolis Constr. Co., supra at 691, 372 Mass. 688, 363 N.E.2d
> 675; Barrell v. Britton, 244 Mass. 273, 278–279, 138 N.E. 579 (1923). Unlike other
> States, our law provides that, when the parties specify a time for the completion

of the sale, the conversion of interest takes place at that specified time-not the date that the parties execute the purchase and sale agreement. Baker v. Commissioner of Corps. & Taxation, 253 Mass. 130, 133–134, 148 N.E. 593 (1925).

In re Pina, 314 B.R. at 327-28) (quoting Kelley v. Neilson, 433 Mass. 706, 714 n.16, 745 N.E.2d 952

(2001)).  Stated another way,

> When a purchase and sale agreement has been executed, the vendor holds the legal title to the property 'subject to an equitable obligation to convey' it to the purchaser 'on payment of the purchase money'. Until the deed is delivered the vendor bears all the risks of ownership should the property be destroyed. He also has the exclusive right to possession of the property and the right to rents and profits. Thus the rights of the purchaser are contract rights rather than rights of ownership of real property.

Laurin v. DeCarolis Const. Co., 372 Mass. at 691, 363 N.E.2d at 677–78 (1977) (citations omitted). The Debtor had rights under the Lease and the installment land contract because "[u]nder the law of the Commonwealth, 'a purchase and sale agreement bestows a significant interest upon the buyer.'" Queeno v. Colonial Co-Operative Bank, 63 Mass. App. Ct. 392, 396, 826 N.E.2d 738, 741 (2005) (citing McDonnell v. Quirk, 22 Mass. App. Ct. 126, 130, 491 N.E.2d 646 (1986)).    The Trust was subject to an equitable obligation to convey the Property to the Debtor upon satisfaction of the Note.

Contrary to the Plaintiff's argument that the Debtor received nothing of value for the Note, the Court concludes, from the facts set forth in the Complaint, that the Debtor received value for the $400,000 obligation because, upon payment of the Note by the Debtor, the Defendants, as Trustees of the Trust, were obligated to convey the Property to her.  By executing the Note, the Debtor obtained the ability to purchase a home worth $419,000 on favorable terms, terms that she was unable to obtain through a conventional mortgage loan transaction.  In addition, she obtained contractual rights under the installment land contract to compel specific performance upon completion of payments.  Moreover, she performed her obligations under the Lease and installment land contract by making the monthly payments required under the Note.

14

Whether the obligation incurred by the Debtor as set forth in the Note, which lacked a maturity date, was reasonably equivalent to the Defendants' contractual undertaking to convey the Property to the Debtor upon payment, however, raises a factual issue requiring an evidentiary issue.  In other words, "'if the benefit of the transaction to the debtor does not substantially offset its cost to him, then his creditors have suffered'" and the obligation can be avoided.  *See* Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.), 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001) (quoting Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991 (2d Cir. 1981)).  Accordingly, assuming all facts in the Complaint as true, and, in the absence of a copy of the Lease and installment land contract, the Court concludes that the Plaintiff has stated a plausible claim that the obligation represented by the Note is potentially voidable.  Even if the Court were to determine that the obligation represented by the Note is voidable such that the Defendants would not be entitled to any distribution from the bankruptcy estate with respect to their proof of claim, the avoidance of the obligation would confer no other advantage other than to eliminate a potential dividend with respect to the Defendants' claim, because sections 550 or 551 of the Bankruptcy Code refer only to avoided transfers.

ii. The December 15, 2016 Mortgage

Pursuant to the December 15, 2016 deed, the Debtor obtained title to the Property in exchange for the $400,000 Mortgage.  The Mortgage was a transfer as that term is defined in 11 U.S.C. § 101(54), and the Plaintiff seeks the avoidance of the Mortgage under Counts I – III.

The Mortgage was not a fraudulent transfer as to creditors of the Debtor because the Debtor obtained Property worth $419,000 in exchange for the execution of the $400,000 Mortgage securing the previously unsecured $400,000 Note.  For purposes of section 548, "'value' means property, or the satisfaction or securing of a present or antecedent debt of the debtor . . ." 11 U.S.C. § 548(d)(2)(A).  The Debtor received more than reasonably equivalent value for the $400,000

15

Mortgage - - - she obtained a deed to the Property worth $419,000. Had the Debtor not executed the Mortgage, she would not have become the owner of the Property. The Debtor's creditors (and the Plaintiff) could not have reached the Property to satisfy their claims prior to December 15, 2016 and, therefore, the creditors were not adversely effected by the execution of the Mortgage. The December 15, 2016 transaction was neutral in terms of creditors' ability to collect their debts.

The Trustee in his Complaint presupposes that if he is successful in avoiding the $400,000 Note, the Mortgage is void, stating that if "the Note was a fraudulent conveyance, the Mortgage is unsupported by any valid payment obligation and therefore void" [sic]. The Court rejects this logic and, accordingly, concludes that the Plaintiff has failed to state a plausible claim for the avoidance of the Mortgage in Counts I-III. The Note is voidable and not void. At the time the Debtor executed the Mortgage, the Note was a valid obligation and "supported" the Mortgage. "If the trustee avoids a 'transfer,' he can recover the property transferred or the value of the property under § 550. If, on the other hand, he avoids an obligation, the obligation is rendered unenforceable, there is nothing to return and § 550 affords no remedy." In re Asia Global Crossing, Ltd., 333 B.R. at 202.

In addition, the Court concludes that the transfer represented by the Mortgage was supported by valuable consideration in the form of the deed to the Property from the Trust to the Debtor. In In re D & S Contractors, Inc., 422 B.R. 1, 4–5 (Bankr. D. Mass. 2010), a case in which, through oversight during a refinancing transaction, the corporate debtor executed a mortgage but only its principal in his individual capacity executed the note, this Court observed:

> "Massachusetts law permits interpretation of the mortgage alone to discover the intention of the parties and the extent of the security." See Chiodetti v. First Lake Corp. (In re Chiodetti), 163 B.R. 6, 10 (Bankr. D. Mass. 1994). . . . The issue is whether the mortgage is enforceable in the absence of the signature of an authorized officer of the Debtor on the Note, as Sneider [the principal] signed the Note in his individual capacity only. Although the Debtor is not obligated on the

16

Note, the Mortgage remains valid, particularly as there was consideration for the Mortgage loan.

Massachusetts courts have cited the Restatement of Property for the proposition that "[a] mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation. A mortgage is enforceable whether or not any person is personally liable for that performance." <u>Washington Mutual Home Loans, Inc. v. DeMello</u>, No. 290843, 2006 WL 1875471 at \*5 (Mass. Land Ct. July 7, 2006) (citing Restatement (Third) Property, § 1.1 (1997)). Generally, "[u]nless a mortgage secures an obligation, it is a nullity." Restatement (Third) Property, § 1.1, cmt. (1997). *See also* <u>Perry v. Miller</u>, 330 Mass. 261, 263, 112 N.E.2d 805 (1953) ("Where the condition of defeasance is the fullfilment [sic] of a promise by the mortgagor, the mortgage depends upon the validity of the mortgagor's obligation. If there is no consideration for the promise, there is no enforceable contract and the mortgage security is not available to the mortgagee."). Nevertheless, Massachusetts law recognizes that "[a] mortgage . . . may exist without there being any debt or any personal liability of the mortgagor." <u>Perry v. Miller</u>, 330 Mass. at 263, 112 N.E.2d 805. *See also* <u>Boston Investors Group, L.P.</u>, 1997 WL 106904 at \*2.

<div align="center">\*\*\*</div>

The facts of the instant case resemble the situation when a debtor's personal liability for an obligation is discharged, but the mortgage encumbering the property is unaffected by the bankruptcy and available for satisfaction of the debt in rem. *Cf.* <u>Washington Mutual Home Loans, Inc. v. DeMello</u>, No. 290843, 2006 WL 1875471 (Mass. Land Ct. July 7, 2006).

<u>In re D & S Contractors, Inc.</u>, 422 B.R. at 4–5.[4] In summary "[w]ithout a valid promissory note, a mortgage is generally not enforceable." *See* <u>Saunders v. Dunn</u>, 175 Mass. 164, 165, 55 N.E. 893

---

[4] In <u>Washington Mutual Home Loans, Inc. v. DeMello</u>, No. 290843 (LJL), 2006 WL 1875471 (Mass. Land Ct. July 7, 2006), the court stated:

> It is established that a 'discharge [in bankruptcy] destroys the remedy but not the indebtedness.'" <u>Groden v. Kelley</u>, 382 Mass. 333, 336 (1981), quoting <u>Zavelo v. Reeves</u>, 227 U.S. 625, 629 (1913). "A debt is not extinguished by a discharge in bankruptcy. The remedy upon the debt and the legal obligation to pay are at an end, but the debt itself is not cancelled." <u>Elliott v. Warwick Stores, Inc.</u>, 329 Mass. 406, 408 (1952). *See* <u>Canton Lumber & Supplies, Inc. v. MacNevin</u>, 354 Mass. 563, 564 (1968); <u>Carmel Credit Union v. Lesser</u>, 344 Mass. 623, 625 (1962); <u>E.S. Parks Shellac Co. v. Harris</u>, 327 Mass. 312, 317 (1921); <u>Wexler v. Davis</u>, 286 Mass. 142, 144 (1934); <u>Citizens Loan Ass'n v. Boston & Maine R.R.</u>, 196 Mass. 528, 530 (1907); <u>Citizens Bank of Mass. v. Callahan</u>, 38 Mass. App. Ct. 702, 704 (1995).

(1900) (mortgage not enforceable where underlying promissory note lacked consideration);

JPMorgan Chase & Co., Inc. v. Casarano, 81 Mass. App. Ct. 353, 354 (Mass. App. Ct. 2012) (the

mortgage was found to be unenforceable because the note was lost and its terms could not be

ascertained; "there was no evidence of any terms that would reveal whether the debt was in

default.").

At the time the Debtor executed the Mortgage and obtained a deed to the Property on

December 15, 2016, the Note was valid and enforceable.  The obligation represented by the Note

may be avoided but it was not void at the time of its execution.  Although the Court has

recognized an issue as to the reasonable equivalence of the value of the obligation under the Note

and the Debtor's rights under the Lease and installment land contract, there was significant

consideration for the Note.  Accordingly, even if the Plaintiff were to succeed on Counts I–III with

---

"A moral obligation to pay the debt survives the discharge [in bankruptcy]."
Groden, 382 Mass. at 336. While the creditor may not look to the debtor personally
for repayment of the debt, "[t]he discharge in bankruptcy of the defendant does
not prevent the plaintiff from subsequently having a judgment entered against
him. . . ." Wexler, 286 Mass. at 144.

"A mortgage is a conveyance or retention of an interest in real property as security
for performance of an obligation. A mortgage is enforceable whether or not any
person is personally liable for that performance." Restatement Third, Property
(Mortgages) § 1.1. Similarly, the Court has held that "[a] valid mortgage may exist
although personal liability on the mortgage note never attached (Cook v. Johnson,
165 Mass. 245, 247 [1896]; Baker v. James, 280 Mass. 43 [1932] ), or has been barred
by bankruptcy or the statute of limitations." Pearson v. Mulloney, 289 Mass. 508,
515 (1935). The fact that DeMello may not have any personal obligation to repay
the 2001 loan does not lead to a finding that the 2001 mortgage is invalid. While
WMHL no longer has a remedy against DeMello, his discharge in bankruptcy
neither extinguished his debt nor prevents WMHL from maintaining its status as
a creditor and satisfying its judgment from the property. Cf. Citizens Bank of
Mass., 38 Mass.App.Ct. at 704 (holding creditor''s suit under fraudulent
conveyance law not barred by debtor's discharge in bankruptcy).

Washington Mut. Home Loans, Inc. v. DeMello, 2006 WL 1875471, at *4–5.

respect to the May 7, 2015 transaction, the Court concludes that he has failed to state a plausible

claim for relief with respect to the December 15, 2016 Mortgage.

D.  <u>Transfer Made with Intent to Defraud</u>

i. Applicable Law

As the court recognized in <u>Butler v. Wojtkun (In re Wojtkun)</u>, 534 B.R. 435 (Bankr. D. Mass.

2015),

> "It is often impracticable, on direct evidence, to demonstrate an actual intent to
> hinder, delay or defraud creditors." Instead, courts may "infer fraudulent intent
> from the circumstances surrounding the transfer . . . taking particular note of
> certain recognized indicia or badges of fraud." The United States Court of Appeals
> for the First Circuit has held that
>
> > [a]mong the more common circumstantial indicia of fraudulent
> > intent at the time of the transfer are: (1) actual or threatened
> > litigation against the debtor; (2) a purported transfer of all or
> > substantially all of the debtor's property; (3) insolvency or other
> > unmanageable indebtedness on the part of the debtor; . . . (4) a
> > special relationship between the debtor and the transferee; and,
> > after the transfer, (5) retention by the debtor of the property
> > involved in the putative transfer.

<u>In re Wojtkun</u>, 534 B.R. at 453 (quoting <u>Max Sugarman Funeral Home, Inc. v. A.D.B. Investors</u>,

926 F.2d 1248, 1254 (1st Cir.1991)) (footnotes omitted).  The court added:  "While "the presence of

a single badge of fraud may spur mere suspicion . . . the confluence of several can constitute

conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a

legitimate supervening purpose." <u>Id.</u> (footnote omitted).  *See also* <u>In re Comprehensive Power,</u>

<u>Inc.,</u> 578 B.R. at 31-32.[5]

---

[5] The Court notes that the Plaintiff did not allege actual fraud under Mass. Gen. Laws ch. 109A,
§5(a).  Section 5(b) provides:

> In determining actual intent under paragraph (1) of subsection (a), consideration
> may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;

ii. Analysis

With respect to the Plaintiff's conclusory allegation in Count III that "[t]he Note and Mortgage were transferred to the Trust with the intent to hinder, delay, or defraud one or more creditors of the Debtor," the Court again observes that the Plaintiff has conflated two transactions separated by 19 months.  The Court concludes this bare allegation is wholly insufficient to state a claim upon which relief can be granted under 11 U.S.C. § 548(a)(a)(1)(A) for the avoidance of a transfer made with "actual intent to hinder, delay, or defraud" creditors.  In the parlance of the Supreme Court, the allegation amounts to no more than a formulaic recitation of the elements of a cause of action.  Twombly, 550 U.S. at 570.

The factual allegations are devoid of reference to the traditional badges of fraud with two exceptions:  1) The Debtor's parents, as Trustees, purchased the Property for their daughter, and, after a nineteen month period of operating under the Lease and installment land contract,

---

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5(b). For purposes of § 5(b)(5), an "asset" is defined as "property of a debtor," but the term does not include property encumbered by a valid lien. Id. § 2.

conveyed the Property to her in exchange for the Mortgage; and 2) the Plaintiff alleged that the

Debtor was insolvent or rendered insolvent.  While transactions involving insiders are subject to

greater scrutiny than those that are arms length, not every transfer among parents and children

can withstand a motion to dismiss without sufficient facts to raise a right to relief above the

speculative level.  The Plaintiff's allegation of actual intent to defraud is insufficient; he has failed

to set forth a plausible claim for relief.  Twombly, 550 U.S. at 555.

  E. Count V: Avoidance of Preferential Transfer

  With respect to the Plaintiff's preference claim set forth in Count V, the Court observes

that it only pertains to the the avoidance of the Mortgage as the execution of the Note was not a

"transfer" made by the Debtor for the reasons set forth above.  The Defendants recognize that all

the elements of a preference, save one, are satisfied.  Section 547(b) provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may
> avoid any *transfer of an interest of the debtor in property*—
>
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt owed by the debtor before such
> > transfer was made;
> > (3) made while the debtor was insolvent;
> > (4) made--
> > > (A) on or within 90 days before the date of the filing
> > > of the petition; or
> > > (B) between ninety days and one year before the
> > > date of the filing of the petition, if such creditor at
> > > the time of such transfer was an insider; and
> > (5) that enables such creditor to receive more than such creditor
> > would receive if--
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and
> > > (C) such creditor received payment of such debt to
> > > the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(emphasis supplied).  At the time the Debtor executed the Mortgage in favor of

the Defendants, they held an unsecured Note in the sum of $400,000.  The Defendants transferred

the Property to the Debtor and she then executed the Mortgage to secure the pre-existing Note,

thus enabling the Debtor to obtain the Property and the Defendants to obtain the ability to satisfy the Note either through Debtor's regular monthly mortgage payments or foreclosure. Without the contemporaneous transfer of the Property to the Debtor, the execution of the Mortgage would have served no purpose and would not have constituted a "transfer" as the Defendants, not the Debtor, held title to the Property. In other words, without the Defendants' contemporaneous transfer of the Property *to* the Debtor, there could have been no "transfer of an interest of the debtor in property." As noted above, the transfer represented by the Mortgage did not enable the Defendants to receive more than they would have in a Chapter 7 case because without the execution of the deed and the conveyance of the Property to the Debtor, the transfer would not have been made.

The Court need not consider the enabling loan defense (or any other defenses) to preference liability with respect to the Mortgage as the Plaintiff's Count V does not state a claim to avoid a preferential transfer.

**V. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order granting in part and denying in part the Defendants' Motion to Dismiss. The Court dismisses Counts I-III with respect to the December 15, 2016 Mortgage, only, as well as Counts IV-VI. The Court shall enter an order dismissing Count III to the extent that the Plaintiff seeks to avoid either the May 7, 2015 Note or December 15, 2016 Mortgage under 11 U.S.C. § 548(a)(1)(A).

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 2, 2018

22